**UNITED STATES COURT OF APPEALS**
**FIFTH CIRCUIT**

_____

No. 92-5753
_____


SANDY DIANA HIRRAS,

                              Plaintiff-Appellant,

VERSUS

NATIONAL RAILROAD PASSENGER
CORPORATION d/b/a AMTRAK,

                              Defendant-Appellee.


_____

Appeal from the United States District Court
for the Western District of Texas

and

On Remand from the Supreme Court
of the United States
_____

(January 31, 1995)

Before POLITZ, Chief Judge, REAVLEY, and EMILIO M. GARZA, Circuit
Judges.

EMILIO M. GARZA, Circuit Judge:

     The National Railroad Passenger Corporation's Petition for
Rehearing is DENIED; and no member of this panel nor judge in
active service on the Court having requested that the Court be
polled on rehearing en banc, the Suggestion for Rehearing En Banc
is also DENIED.  However, we withdraw our prior opinion, *Hirras v.
National Railroad Passenger Corp.*, 39 F.3d 522 (5th Cir. 1994), and

substitute the following:

This matter is on remand from the United States Supreme Court for further consideration in light of *Hawaiian Airlines, Inc. v. Norris*, ___ U.S. ___, 114 S. Ct. 2239, 129 L. Ed. 2d 203 (1994).[1] In *Hirras v. National Railroad Passenger Corp.*, 10 F.3d 1142 (5th Cir.), *vacated*, ___ U.S. ___, 114 S. Ct. 2732, 129 L. Ed. 2d 855 (1994), we affirmed the district court's dismissal of Sandy Diana Hirras' Title VII,[2] state-law intentional infliction of emotional distress, and state-law negligent infliction of emotional distress claims. In light of the Court's recent decision in *Hawaiian Airlines*, we now reverse the district court's rulings as to Hirras' intentional infliction of emotional distress and Title VII claims.[3]

I

Hirras alleges that her employer, the National Railroad Passenger Corporation ("Amtrak"), "failed to provide her with a non-hostile workplace." (R. on Appeal at 552.) She complains of verbal abuse from her co-workers and abusive telephone calls, notes, and graffiti from anonymous sources. Amtrak contends that it initiated a thorough, if unsuccessful, investigation of the anonymous acts.

Hirras sued Amtrak in federal district court for Title VII

_____

[1]    *See Hirras v. National R.R. Passengers Corp.*, ___ U.S. ___, 114 S. Ct. 2732, 129 L. Ed. 2d 855 (1994).

[2]    42 U.S.C. § 2000e (1988).

[3]    Texas does not recognize the tort of negligent infliction of emotional distress. *Boyles v. Kerr*, 855 S.W.2d 593 (Tex. 1993). Thus, we do not disturb the district court's dismissal of Hirras' negligent infliction of emotional distress claim.

violations, and for negligent and intentional infliction of emotional distress. The district court dismissed the state-law negligent infliction of emotional distress claim on the grounds that Texas does not recognize such a claim. The court further held that Hirras' Title VII and state-law intentional infliction of emotional distress claims were preempted by the Railway Labor Act ("RLA"), 45 U.S.C. § 151 (1988). Hirras appealed the district court's dismissal of both her federal and state-law claims.

II

First, Hirras argues that the Supreme Court's decision in *Hawaiian Airlines* supports her contention that her state-law claim of intentional infliction of emotional distress is not preempted by the mandatory arbitration provisions of the RLA. Hirras contends that her intentional infliction of emotional distress claim is not a "minor dispute" for the purposes of the RLA because it is grounded in rights and obligations that exist independent of the collective-bargaining agreement ("CBA") that governed the terms of her employment.

Generally, all disputes growing out of "grievances" or out of the interpretation or application of a CBA are preempted by the RLA's mandatory arbitration provisions. *See* 45 U.S.C. § 151a. One of the goals of the RLA is to "provide for the prompt and orderly settlement of all disputes growing out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions." *Id.* Because such disputes concern an existing CBA, they "seldom produce strikes" and are known as the

-3-

"minor disputes of the railway labor world." *Elgin, J. & E. Ry. Co. v. Burley*, 325 U.S. 711, 723-24, 65 S. Ct. 1282, 1290, 89 L. Ed. 1886 (1945), *aff'd on reh'g*, 327 U.S. 661, 66 S. Ct. 721, 90 L. Ed. 928 (1946). Minor disputes are to be contrasted with "major disputes," which "present the larger issues about which strikes ordinarily arise" because they "seek to create rather than to enforce contractual rights," *see id.*, and with those disputes that seek neither to create nor enforce the contractual rights created by a CBA. Under the RLA, only minor disputes "may be referred by petition of the parties or by either party to the appropriate division of the [National Railroad] Adjustment Board" ("NRAB") for arbitration. *Id.* (quoting 45 U.S.C. § 151a).

The language of § 151a thus limits the RLA's preemption of claims, including state-law claims, to those involving the interpretation or application of a CBA. *Hawaiian Airlines*, ___ U.S. ___, 114 S. Ct. 2239, 129 L. Ed. 2d 203 (1994). While § 151a governs "disputes growing out of *grievances* or out of the interpretation or application [of CBA's]," 45 U.S.C. § 151a (emphasis added), the Supreme Court held in *Hawaiian Airlines* that "the most natural reading of the term `grievances' in this context is as a synonym for disputes involving the application or interpretation of a CBA." *Id.*, ___ U.S. at ___, 114 S. Ct. at 2245.[4] This interpretation is consistent with previous Supreme

_____

[4] In our previous opinion, we relied on a Supreme Court decision containing contradictory language. In *Elgin, Joliet & Eastern Railway Co. v. Burley*, 325 U.S. 711, 65 S. Ct. 1282, 89 L. Ed. 1886 (1945), the Court included in the category of minor disputes those disputes "founded upon some incident of the employment relationship, or asserted one, independent of those covered by the

-4-

Court decisions. *See, e.g., Consolidated Rail Corp. v. Railway Labor Executives' Ass'n*, 491 U.S. 299, 305, 109 S. Ct. 2477, 2482, 105 L. Ed. 2d 250 (1989) ("The distinguishing feature of [a minor dispute] is that the dispute may be conclusively resolved by interpreting the existing [CBA]"); *Pittsburgh & Lake Erie R.R. Co. v. Railway Labor Executives' Ass'n*, 491 U.S. 490, 501 n.12, 109 S. Ct. 2584, 2592 n.12, 105 L. Ed. 2d 415 (1989) ("Minor disputes are those involving the interpretation or application of existing contracts.").

The Court in *Hawaiian Airlines* noted that claims involving only factual questions "about an employee's conduct or an employer's conduct and motives" do not require an interpretation of the CBA. *Id.*, ___ U.S. at ___, 114 S. Ct at 2248. The Court cited for support its decision in *Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399, 108 S. Ct. 1877, 100 L. Ed. 2d 410 (1988), in which it held that when the elements of a cause of action are "purely factual questions" that pertain to "the conduct of the employee and the conduct and motivation of the employer," no interpretation of the CBA is necessary.[5] *Id.* at 407, 108 S. Ct. at

___

collective bargaining agreement, e.g. claims on account of personal injury." *Id.*, 325 U.S. at 723, 65 S. Ct. at 1290. However, the Court in *Hawaiian Airlines* noted that because the dispute in *Burley* did involve the interpretation of a CBA, any references to disputes independent of a CBA were dicta. *Hawaiian Airlines*, ___ U.S. at ___, 114 S. Ct. at 2250. The Court went on to "expressly disavow any language in *Burley* suggesting that minor disputes encompass state-law claims that exist independent of the collective-bargaining agreement."

[5]    Although *Lingle* involved the Labor Management Relations Act ("LMRA") and not the RLA, the Court held that "th[e] convergence in the preemption standards under the two statutes [led it to] conclude that *Lingle* provides an appropriate framework for addressing pre-emption under the RLA, and we adopt the *Lingle* standard to resolve claims of RLA pre-emption." *Hawaiian Airlines*, ___ U.S. at ___, 114 S. Ct. at 2249.

1882. *Lingle* involved a state-law claim of retaliatory discharge, requiring the plaintiff to set forth the following facts: "(1) he was discharged or threatened with discharge and (2) the employer's motive in discharging or threatening to discharge him was to deter him from exercising his rights under the Act or to interfere with his exercise of those rights." *Id.* The Court concluded that "neither element requires a court to interpret any term of a collective-bargaining agreement. . . . Thus, the state-law remedy in this case is `independent' of the collective-bargaining agreement . . . : resolution of the state-law claim does not require construing the collective-bargaining agreement." *Id.*

Thus, the Supreme Court held that "substantive protections provided by state law, independent of whatever labor agreement might govern, are not pre-empted under the RLA." *Hawaiian Airlines*, ___ U.S. at ___, 114 S. Ct. at 2246. The Court noted that state laws "have long regulated a great variety of conditions in transportation and industry," a number of which might be the subject of a dispute "which would have such an effect on interstate commerce that federal agencies might be invoked to deal with some phase of it." *Id.* at ___, 114 S. Ct. at 2246 (quoting *Terminal R.R. Ass'n v. Brotherhood of R.R. Trainmen*, 318 U.S. 1, 6-7, 63 S. Ct. 420, 423, 87 L. Ed. 571 (1943)). "But it cannot be said that the minimum requirements laid down by state authority are all set aside. We hold that the enactment by Congress of the [RLA] was not a preemption of the field of regulating working conditions themselves." *Id.* (quoting *Terminal R.R. Ass'n*, 318 U.S. at 7, 63

S. Ct. at 423).

The Court in *Hawaiian Airlines* discussed three examples of state-law substantive protections that it considered to be independent of any labor agreement for the purposes of the RLA. A claim based on a state law prohibiting employers from firing employees "in violation of public policy or in retaliation for whistleblowing," does not require an interpretation of a CBA, and thus is not preempted, *id.* at ___, 114 S. Ct. at 2246,[6] even if the CBA in question contained provisions that could be interpreted to justify the termination, *id* at ___, 114 S. Ct. at 2251. Similarly, a claim based on a state law requiring cabooses on all trains is not preempted by the RLA, even if the CBA required cabooses only on some trains. *See id.* at ___, 114 S. Ct. at 2246 (citing *Terminal R.R. Ass'n*). Finally, a claim based on a state law "regulating the number of workers required to operate certain [railroad] equipment" is not preempted, *see id.* (citing *Missouri Pac. R.R. Co. v. Norwood*, 283 U.S. 249, 51 S. Ct. 458, 75 L. Ed. 1010, *modified on other grounds*, 283 U.S. 809, 51 S. Ct. 652, 75 L. Ed. 1428 (1931)), even if the railroad's agreement with the union allows it to employ a smaller crew, *id.* at 254, 51 S. Ct. at 461.

The Court also provided an example of a case in which it held that preemption by the RLA was justified. In *Andrews v. Louisville & N.R. Co.*, 406 U.S. 320, 92 S. Ct. 1562, 32 L. Ed. 2d 95 (1972),

---

[6]     "The parties' obligation under the RLA to arbitrate disputes arising out of the application or interpretation of the CBA [does] not relieve petitioners of [their] duty" not to violate a state law against firing employees in violation of public policy or in retaliation for whistleblowing. *Id.*

a railroad employee challenged his employer's decision not to restore him to his regular duties after being injured in a car accident. *Id.* The Court held that "a state law claim of wrongful termination was pre-empted, not because the RLA broadly pre-empts state law claims based on discharge or discipline," but because the employee conceded that the "only source" of his right to be reinstated after such an injury was the CBA. *Hawaiian Airlines*, ___ U.S. at ___, 114 S. Ct. at 2246.

As these examples demonstrate, a claim is preempted by the RLA only if it relies on the interpretation of a provision of the CBA; if the claim is brought under state law without any reference to the CBA, then it is not preempted. Thus, where an employer has a state-law obligation "wholly apart from any provision of the CBA," claims brought to enforce the state-law obligation are not preempted by the RLA. *Id.* at ___, 114 S. Ct. at 2247. A state-law claim is independent "even if dispute resolution pursuant to a collective-bargaining agreement, on the one hand, and state law, on the other, would require addressing precisely the same set of facts, as long as the state-law claim can be resolved without interpreting the agreement itself . . . ." *Id.* at ___, 114 S. Ct. at 2249 (quoting *Lingle*, 486 U.S. at 408, 108 S. Ct. at 1883).

Hirras contends that her intentional infliction of emotional distress claim does not rely on any provision of the CBA, and thus its resolution does not require an interpretation of the CBA. Amtrak, on the other hand, argues that we must interpret the CBA in order to determine whether its handling of the harassment was

"outrageous."[7]  To prove intentional infliction of emotional distress, Hirras must demonstrate that: "(1) the defendant acted intentionally or recklessly, (2) the conduct was extreme and outrageous, (3) the actions of the defendant caused the plaintiff emotional distress, and (4) the emotional distress suffered by the plaintiff was severe." *Twyman v. Twyman*, 855 S.W.2d 619 (Tex. 1993) (citing Restatement (Second) of Torts § 46 (1965)).  Amtrak contends that whether its handling of the harassment was substandard to the point of outrageousness, a necessary finding, turns on what standard it was expected to meet under the CBA. However, this Circuit has unequivocally stated that "outrageous conduct is that which `[goes] beyond all possible bounds of decency, and [is] regarded as atrocious, and utterly intolerable in a civilized community.'"  *See Daniels v. Equitable Life Assurance Soc'y of United States*, 35 F.3d 210, 216 (5th Cir. 1994) (quoting Restatement (Second) of Torts § 46, cmt. d).

Texas state courts have held that an individual's conduct will not be considered outrageous for the purposes of an intentional infliction of emotional distress claim "if he does no more than insist upon his legal rights in a permissible way." *Wieler v. United Sav. Ass'n*, 887 S.W.2d 155, 159 (Tex. App.))Texarkana, Sept. 20, 1994, writ requested); *see also* Restatement (Second) of Torts

---

[7]     Amtrak cites as support for its position the Sixth Circuit's holding in a "post-*Hawaiian Airlines*" case involving LMRA preemption of an emotional distress claim based on the manner in which an investigation of charges of sexual harassment was conducted. (Appellant's Br. at 6 (citing *DeCoe v. General Motors Corp.*, 32 F.3d 212 (6th Cir. 1994)).  Although *DeCoe* was decided a month after *Hawaiian Airlines*, the Sixth Circuit makes no reference to the Supreme Court decision.  *DeCoe* is also factually distinguishable from this case. *See infra* note 12.

§ 46, cmt. g.  Accordingly, we held in *Baker v. Farmers Electrical Co-op, Inc.*, 34 F.3d 274 (5th Cir. 1994), that if a CBA could be interpreted to give an employer the right to engage in conduct that is the subject of an intentional infliction of emotional distress claim, an interpretation of the rights granted by the CBA is necessary to the resolution of the state-law claim.  *See id.* (holding that interpretation of reassignment provisions of CBA was "inextricably intertwined with resolution of the question whether [reassignment] was extreme and outrageous").

Hirras' claim is easily distinguishable from that in *Baker*. In *Baker*, we noted that Baker did not allege any "instances of harassment, discrimination, physical abuse, or other conduct which would provide grounds for an emotional distress claim."[8]  *Baker*, 34 F.3d at 280.  We concluded that: "The terms of the CBA are relevant to this issue, because the CBA expressly grants management rights over the business of Farmers and its employees which could be interpreted to include the right to reassign an employee's duties."[9]  *Id.*  Baker's counsel even conceded at oral argument that reference to the CBA was necessary to the resolution of Baker's intentional infliction of emotional distress claim.  *Id.* at 280

---

[8]    Baker's employer, an electric company, moved him from the position of journeyman lineman, a position he had held for fourteen years, to the "demeaning" job of custodian/yardman.  *Id.* at 277.

[9]    *See also Thomas v. LTV*, 39 F.3d 611 (5th Cir. 1994).  In *Thomas*, we held that an employee's intentional infliction of emotional distress claim based on his dismissal for excessive absences was preempted by the LMRA.  *Id.* at 619. Our holding was based on the fact that the employee had signed an employment agreement that "qualifie[d] as a CBA" for the purposes of preemption, *id.* at 618, and that gave his employer the right to discharge him if his total number of absences exceeded a certain percentage of his scheduled work days, *id.* at 614.

n.5.

In contrast, Hirras *does* make claims of harassment. (R. on Appeal at 552.) Unlike Baker, Hirras contends that the terms of the CBA are irrelevant to her state-law claim. (Appellant's Br. on Remand at 12.) We agree.[10] The terms of the CBA at issue in this case are not relevant to the resolution of Hirras' claim because the CBA contains no provision related to sexual harassment,[11] much less any provision that could be interpreted to give Amtrak the right to accommodate sexual harassment or Hirras the right to work in a non-hostile environment.[12] Hirras' intentional infliction of

---

[10] Even if the resolution of Hirras' claim involved a reference to the rights and duties created by the CBA, the Court in *Hawaiian Airlines* emphasized that "when the meaning of contract terms is not the *subject* of dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be distinguished." *Id.*, ___ U.S. at ___, 114 S. Ct. at 2248 n.8 (emphasis added) (quoting *Livadas v. Aubry*, ___ U.S. ___, 114 S. Ct. 2068, 2078, 129 L. Ed. 2d 93 (1994)).

[11] The CBA between Amtrak and its employees, as is was submitted to this Court, (*see* R. on Appeal at 686), is divided into the following sections: Preamble; Seniority Datum; Validating Applications; Seniority Roster; Promotion, Assignments, and Displacements; Bulletin and Assignment; Short Vacancies; Failure to Qualify; Voluntary Transfer; Reducing and Increasing Forces; Sick Leave; Bereavement Leave; Leave of Absence; Return from Leave of Absence or Temporary Assignment; Physical Examinations and Disqualification; Discipline, Investigation, and Appeal; Grievances; Vacation, Holiday, and Group Insurance; and Union Shop and Dues Deduction. (R. on Appeal at 712-13.)
Amtrak contends on remand that the resolution of Hirras' claim requires an interpretation of the provision of the CBA governing "what actions Amtrak was required to take in response to Hirras' complaints that she was being harassed," but does not point to a particular provision. The CBA's section entitled "Grievances," the only section even tangentially related to the handling of employee complaints, addresses only the employees' right to file a grievance.

[12] The absence of any such provision distinguishes Hirras' claim of intentional infliction of emotional distress from that in *DeCoe v. General Motors Corp.*, *see supra* note 7, which Amtrak describes as a "post-*Hawaiian Airlines*" case involving LMRA preemption of an emotional distress claim based on the manner in which an investigation of charges of sexual harassment was conducted. (Appellant's Br. at 6 (citing *DeCoe*, 32 F.3d 212 (6th Cir. 1994)). DeCoe's claim was based on the manner in which his employers conducted a sexual harassment investigation *against him*, and the relevant CBA "incorporated a sexual harassment policy, which imposed a duty on GM, the individual defendants, and the [union] to identify and resolve harassment complaints. In addition, the CBA specified that sexual harassment claims were subject to its grievance and arbitration

-11-

emotional distress claim does not depend on an interpretation of the CBA, and thus is independent of the CBA.[13]

In similar cases, the Supreme Court has held that claims based on emotional injury are not preempted by federal labor laws. In *Atchison, Topeka & Santa Fe Ry. Co. v. Buell*, 480 U.S. 557, 107 S. Ct. 1410, 94 L. Ed. 2d 563 (1987), the Court held that a railroad employee's claim under the Federal Employers' Liability Act ("FELA")[14] that he had experienced "emotional suffering" from his employer's "failure `to provide [him] with a safe place to work, including, but not limited to, having fellow employees harass, threaten, [and] intimidate [him]'" was not preempted by the RLA. *Id.* at 559, 107 S. Ct. at 1412.[15] In *Farmer v. United Brotherhood*

---

[13]     *See Martin Marietta Corp. v. Maryland Comm'n on Human Relations*, 38 F.3d 1392, 1401 (4th Cir. 1994) (holding that LMRA did not preempt a discrimination claim because CBA did not create any rights or duties related to discrimination, and comparing holding to its previous determination "that an employee's tort claim of intentional infliction of emotional distress was not subject to preemption, because reference to the CBA was unnecessary to determine the duty of care owed").

[14]     The Court in *Hawaiian Airlines* noted:

> *Buell*, of course, involved possible RLA preclusion of a cause of action arising out of a federal statute, while [*Hawaiian Airlines*] involves RLA preemption of a cause of action arising out of state law and existing entirely independent of the collective bargaining agreement. That distinction does not rob *Buell* of its force in this context. Principles of federalism demand no less caution in finding that a federal statute preempts state law.

*Hawaiian Airlines*, ___ U.S. at ___ n.6, 114 S. Ct. at 2247 n.6 (citation omitted).

[15]     The Court in *Buell* noted that while there are policy arguments for arbitration, "`different considerations apply where the employee's claim is based on rights arising out of a statute designed to provide minimum substantive guarantees to individual workers.'" *Id.* at 565, 107 S. Ct. at 1415 (quoting *Barrentine v. Arkansas-Best Freight System, Inc.*, 450 U.S. 728, 737, 101 S. Ct. 1437, 1442, 67 L. Ed. 2d 641 (1981)); *see also Hawaiian Airlines*, ___ U.S. at ___, 114 S. Ct. at 2247.

*of Carpenters, Local 25*, 430 U.S. 290, 97 S. Ct. 1056, 51 L. Ed. 2d 338 (1977), the Court held that a state-law claim of intentional infliction of emotional distress was not preempted by federal labor law because "the State has a substantial interest in regulation of the conduct at issue and the State's interest is one that does not threaten undue interference with the federal regulatory scheme." *Id.* at 302, 97 S. Ct. at 1064 ("With respect to [plaintiff's] claims of intentional infliction of emotional distress, we cannot conclude that Congress intended exclusive jurisdiction to lie in the Board.").

Hirras' state-law claim of intentional infliction of emotional distress is independent of the CBA because its resolution does not require an interpretation of the CBA. Therefore, we hold that this claim is not preempted by the RLA's arbitration provisions.

## III

Second, Hirras argues that the Supreme Court's decision in *Hawaiian Airlines v. Norris* supports her contention that her Title VII claim is not preempted by the mandatory arbitration provisions of the RLA. Because Amtrak has waived its contention that this claim must be arbitrated, we also reverse the district court's dismissal of Hirras' Title VII claim.

## IV

For the foregoing reasons, we REVERSE and REMAND to the district court for consideration of Hirras' intentional infliction of emotional distress and Title VII claims.