**Sandy Diana HIRRAS, Plaintiff–Appellant,**

v.

**NATIONAL RAILROAD PASSENGER CORPORATION d/b/a Amtrak, Defendant–Appellee.**

No. 96–50173

Summary Calendar.

United States Court of Appeals, Fifth Circuit.

Sept. 25, 1996.

Christine Emerson Chemell, Malinda Ann Gaul, Gaul & Dumont, San Antonio, TX, for plaintiff-appellant.

George P. Parker, Jr., Wells, Pinckney & McHugh, San Antonio, TX, Kathleen Johnson Raynsford, Washington, D.C., for defendant-appellee.

Before HIGGINBOTHAM, WIENER and BENAVIDES, Circuit Judges.

PER CURIAM:

Sandy Diana Hirras brought suit against the National Railroad Passenger Corporation ("Amtrak"), alleging a violation of Title VII and a claim for intentional infliction of emotional distress. This case is not a stranger to this court. In *Hirras v. National Railroad Passenger Corp.*, 10 F.3d 1142 (5th Cir.), *vacated,* —— U.S. ——, 114 S.Ct. 2732, 129 L.Ed.2d 855 (1994), we affirmed the district court's dismissal of Hirras's intentional infliction of emotional distress claim and her Title VII claim on preemption grounds and affirmed the dismissal of her negligent infliction of emotional distress claim. On remand from the United States Supreme Court, we reversed the district court's dismissal of her intentional infliction of emotional distress and Title VII claims in light of *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 114 S.Ct. 2239, 129 L.Ed.2d 203 (1994). *See Hirras v. National R.R. Passenger Corp.*, 44 F.3d 278 (5th Cir.1995).[1]

On remand from this court, the district court granted summary judgment in favor of Amtrak on the merits of both Hirras's claims. We affirm.

I.

Amtrak employed Hirras as a ticket and baggage clerk in its San Antonio station on February 20, 1989. That spring, Hirras began to receive obscene and threatening anonymous telephone calls, both at home and at work. In addition to calling Hirras vulgar names, the caller stated that she could not handle baggage because she was "not a man." She continued to receive the anonymous calls until 1992, even after she took a medical leave of absence from Amtrak.[2]

In April of 1989, Hirras found a typewritten note on the windshield of her car. Among other vulgarities, the writer suggested that she obtained her job by sleeping with her supervisor, that she was "only good [for] one thing," and that he would be "watching for [her]." Two months later, someone spray-painted similar graffiti on the door of the station's baggage room, threatening that Hirras should "quit or else." [3]

Around the same time that Hirras began to receive the harassing anonymous calls, her co-workers (male and female) also began to receive threatening anonymous calls. These calls followed on the heels of a drug-related arrest, which was facilitated by an Amtrak employee at the San Antonio station. Amtrak called upon four law enforcement agencies to investigate the anonymous phone calls: the Amtrak police, the Southern Pacific police, the San Antonio Police, and the FBI. In addition to referring the matter to these authorities, Neil Wright, an Amtrak district supervisor, interviewed every employee at the San Antonio station about the anonymous calls. A wire tap was also placed on the phones at the Amtrak station. De-

---

1. We left undisturbed the district court's dismissal of her negligent infliction of emotional distress claim because Texas does not recognize such a cause of action. *Hirras,* 44 F.3d at 280 n. 3.

2. Hirras alleges that she took medical leave beginning in June of 1989 in response to the events giving rise to this lawsuit.

3. Hirras also alleges that she was verbally harassed by her co-workers. But because she failed to allege verbal harassment by co-workers in her complaint to the EEOC, she cannot base her Title VII claim on those comments. *Matthews v. A–1, Inc.,* 748 F.2d 975, 976–77 (5th Cir.1984).

spite Amtrak's efforts, the caller was never identified.

After learning that Hirras had received a vulgar note, Wright attempted to determine whether the note had been typed on an Amtrak typewriter by comparing the typeface of the note with that of each station typewriter. When he was unable to match the typeface, he forwarded a copy of the note to the Amtrak police and the Southern Pacific police for further investigation. Wright assured Hirras that if he discovered that an Amtrak employee had written the note, that employee "wouldn't have a job the next day." Amtrak never identified the person who left the note.

Wright also investigated the graffiti. He took photographs of the graffiti and searched trash cans at the station in an attempt to locate discarded paint cans and other evidence. He provided copies of the photographs to his own supervisor and to Hirras. Both the Southern Pacific police and the San Antonio Police investigated the graffiti as well. After the San Antonio Police completed their investigation, Wright had the door repainted. Wright again assured Hirras that if an Amtrak employee were responsible for the graffiti, that individual would be fired. Like the anonymous caller and the notewriter, the perpetrator of the graffiti was never identified.

## II.

■ We review the district court's grant of a summary judgment *de novo*, applying the same standard as the district court. *Hanks v. Transcontinental Gas Pipe Line Corp.*, 953 F.2d 996, 997 (5th Cir.1992). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). The party seeking summary judgment carries the burden of demonstrating that there is an absence of evidence to support the nonmovant's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). After a proper motion for summary judgment is made, the nonmovant must set forth specific facts showing that there is a genuine issue for trial. *Hanks*, 953 F.2d at 997.

■ After consulting the applicable substantive law to determine which facts and issues are material, we review the evidence in the light most favorable to the nonmovant relating to those issues. *Exxon Corp. v. Burglin*, 4 F.3d 1294, 1297 (5th Cir.1993). If Hirras, as nonmovant, brings forth summary judgment evidence of specific facts in support of allegations essential to her claim, a genuine issue is presented, and summary judgment must be denied. *Celotex*, 477 U.S. at 327, 106 S.Ct. at 2554–55.

## A.

■ To maintain a workplace sexual harassment claim, the claimant must show that (1) she belongs to a protected class; (2) she was subject to unwelcome sexual harassment; (3) the harassment was based on sex; (4) the harassment affected a term, condition, or privilege of employment (*i.e.*, that the harassment was sufficiently pervasive or severe to create an abusive work environment); and (5) the employer knew or should have known of the harassment and failed to take prompt remedial action. *Jones v. Flagship Int'l*, 793 F.2d 714, 719–20 (5th Cir.1986), *cert. denied*, 479 U.S. 1065, 107 S.Ct. 952, 93 L.Ed.2d 1001 (1987).

■ The district court concluded that Hirras failed to raise an issue of material fact on two essential elements of her Title VII claim: that the harassing behavior was sufficiently severe or pervasive to create a hostile working environment and that Amtrak knew or should have known of the problem and failed to take prompt remedial action. Because we conclude that Amtrak took prompt remedial action in response to Hirras's complaints as a matter of law, we need not address whether the conduct in question was sufficiently severe or pervasive to create a hostile work environment.

■ Whether an employer's response to discriminatory conduct is sufficient "will necessarily depend on the particular facts of the

case—the severity and persistence of the harassment, and the effectiveness of any initial remedial steps." *Waltman v. International Paper Co.*, 875 F.2d 468, 479 (5th Cir.1989) (citations omitted). On several occasions, we have held that an employer's response to discriminatory conduct constituted prompt remedial action as a matter of law. *See, e.g., Waymire v. Harris County*, 86 F.3d 424, 428 (5th Cir.1996); *Carmon v. Lubrizol Corp.*, 17 F.3d 791, 794–95 (5th Cir.1994); *Nash v. Electrospace Sys., Inc.*, 9 F.3d 401, 404 (5th Cir.1993); *Dornhecker v. Malibu Grand Prix Corp.*, 828 F.2d 307, 309–10 (5th Cir.1987).

Here, the summary judgment evidence demonstrates that Amtrak took Hirras's complaints seriously and conducted a prompt and thorough investigation. *See Carmon,* 17 F.3d at 795. Amtrak also referred the matter to proper law enforcement authorities. Despite these efforts, Amtrak was never able to identify the offending party. Nor was Amtrak even able to determine with certainty that the perpetrator was an Amtrak employee, although the summary judgment suggests that he may have been. Under the particular summary judgment evidence presented in this case, we hold that no reasonable juror could find that Amtrak failed to take prompt remedial action in response to Hirras's complaints.

### B.

Hirras also contends that the district court erred in granting summary judgment on her intentional infliction of emotional distress claim. Under Texas law, intentional infliction of emotional distress has four elements: (1) the defendant acted intentionally or recklessly; (2) the conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff emotional distress; and (4) the emotional distress suffered by the plaintiff was severe. *Mattix–Hill v. Reck,* 923 S.W.2d 596, 597 (Tex. 1996) (citing *Twyman v. Twyman,* 855 S.W.2d 619, 621 (Tex.1993)). An employer's conduct, even if a Title VII violation, rises to the level of "extreme and outrageous" in only "the most unusual cases." *Prunty v. Arkansas Freightways, Inc.,* 16 F.3d 649,

654 (5th Cir.1994) (citations omitted), *reh'g denied en banc,* 21 F.3d 1110 (5th Cir. 1994). The defendant's conduct must have been "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Twyman,* 855 S.W.2d at 621 (quoting RESTATEMENT (SECOND) OF TORTS § 46 cmt. d (1965)).

Hirras argues on appeal that Amtrak's response to her complaints was extreme and outrageous. We disagree. Far from being extreme and outrageous, Amtrak's actions were appropriate under the circumstances. Further, Hirras has presented no summary judgment evidence creating a fact issue regarding whether the perpetrator's behavior could be imputed to Amtrak. Consequently, the district court did not err in granting summary judgment in favor of Amtrak on this claim.

### III.

For the foregoing reasons, the district court's grant of summary judgment is AFFIRMED.