**James E. JOHNSON, Plaintiff,**

v.

**NORFOLK SOUTHERN CORPORATION, et al., Defendants.**

**Civil Action No. 96–AR–3375–S.**

United States District Court, N.D. Alabama, Southern Division.

Jan. 21, 1997.

Van Kirk McCombs, II, Burge & Wettermark, Birmingham, AL, for Plaintiff.

Crawford S. McGivaren, Jr., John Mark Graham, Cabaniss Johnston Gardner Dumas & O'Neal, Birmingham, AL, for Defendants.

### MEMORANDUM OPINION

ACKER, District Judge.

At this court's regular motion docket on January 16, 1997, the court heard plaintiff's motion to remand the above-entitled case to the Circuit Court of Jefferson County from which it was removed by defendants. Plaintiff, James E. Johnson ("Johnson"), was an employee of defendant, Norfolk Southern Railway Company ("Norfolk Southern"), until fired shortly after he served on a jury which entered a substantial verdict against Norfolk Southern. Johnson sued in the state court, invoking Ala.Code § 12–16–8.1, by alleging that he was terminated solely because of his jury service. Johnson added a count for the tort of outrage, claiming that defendants intentionally inflicted on him emotional distress. Norfolk Southern and the other defendants removed, relying upon the alleged preemptive effect of the Railway Labor Act ("RLA"), 45 U.S.C. §§ 151, *et seq.* Consistent with its position that the RLA provides the only relief available to Johnson, Norfolk Southern has accompanied its notice of removal with a motion to dismiss, contending that this controversy constitutes a "minor dispute" as contemplated by the RLA and is therefore the subject of compulsory and binding arbitration before the National Railroad Adjustment Board, leaving this court as devoid of jurisdiction as was the state court. The notice of removal is also accompanied by an affidavit setting forth certain facts undisputed by Johnson, i.e., that Johnson started grieving his discharge pursuant to the Collective Bargaining Agreement ("CBA") between Johnson's union and Norfolk Southern, but did not carry that procedure to its logical conclusion, and instead filed this suit.

Norfolk Southern has wisely not argued that Johnson's invocation of the grievance machinery constitutes an estoppel or a binding concession of the exclusivity of his administrative avenue. This court agrees that the fact of Johnson's having proceeded half way on one track does not mean that he must go all the way on that track. Questions of jurisdiction are decided not by waiver but by interpreting and applying pertinent jurisdictional statutes. This court is, after all, a court of limited jurisdiction obligated by the principles of federalism to reject questionable removals.

The mere fact that Johnson's complaint refers to no federal statute is, of course, not controlling where the RLA is necessarily implicated. The so-called "well pleaded complaint" rule does not prevent a removal *if* the facts averred in the complaint necessarily involve the interpretation or application of the CBA. 45 U.S.C. § 151a. The question here, then, is not whether Johnson initially chose the correct and only forum available to him but whether the issues he presents in his court complaint can be resolved without an application or interpretation of the CBA.

In their removal papers defendants conspicuously failed to mention *Hirras v. National R.R. Passenger Corp.,* 44 F.3d 278 (5th Cir.1995), the case this court finds to be right on point. Based on *Hirras,* this court concludes that this particular controversy can be decided without reference to the CBA and therefore is not preempted by the RLA and is not removable. In *Hirras,* the Fifth Circuit reconsidered a case remanded to it by the Supreme Court of the United States in light of *Hawaiian Airlines, Inc. v. Norris,* 512 U.S. 246, 114 S.Ct. 2239, 129 L.Ed.2d 203 (1994). *Hirras* involved a claim by a railroad

employee virtually identical to Count Two of Johnson's complaint for the intentional infliction of emotional distress. Johnson's claim of wrongful discharge related solely to his jury service involves the same operative facts as does his outrage claim, and is just as much a question to be resolved under state law. This court does not believe that the Fifth Circuit misread the Supreme Court when the Fifth Circuit laid out the applicable principles in the following graphic terms:

> The Court in *Hawaiian Airlines* noted that *claims involving only factual questions "about an employee's conduct or an employer's conduct and motives" do not require an interpretation of the CBA. Id.,* 512 U.S. at 260, 114 S.Ct. at 2248. The Court cited for support its decision in *Lingle v. Norge Division of Magic Chef, Inc.,* 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988), in which it held that when the elements of a cause of action are "purely factual questions" that pertain to "the conduct of the employee and the conduct and motivation of the employer," no interpretation of the CBA is necessary. *Id.* at 407, 108 S.Ct. at 1882. *Lingle* involved a state-law claim of retaliatory discharge, requiring the plaintiff to set forth the following facts: "(1) he was discharged or threatened with discharge and (2) the employer's motive in discharging or threatening to discharge him was to deter him from exercising his rights under the Act or to interfere with his exercise of those rights." *Id.* The Court concluded that "neither element requires a court to interpret any term of a collective-bargaining agreement.... Thus, the state-law remedy in this case is 'independent' of the collective-bargaining agreement ...: resolution of the state-law claim does not require construing the collective-bargaining agreement." *Id.*
>
> Thus, *the Supreme Court held that "substantive protections provided by state law, independent of whatever labor agreement might govern, are not pre-empted under the RLA." Hawaiian Airlines,* 512 U.S. at 256–57, 114 S.Ct. at 2246. The Court noted that state laws "have long regulated a great variety of conditions in transportation and industry," a number of which might be the subject of a dispute "which

would have such an effect on interstate commerce that federal agencies might be invoked to deal with some phase of it." *Id.* at 257, 114 S.Ct. at 2246 (quoting *Terminal R.R. Ass'n v. Brotherhood of R.R. Trainmen,* 318 U.S. 1, 6–7, 63 S.Ct. 420, 423, 87 L.Ed. 571 (1943)). "But it cannot be said that the minimum requirements laid down by state authority are all set aside. We hold that the enactment of Congress of the [RLA] was not a preemption of the field of regulating working conditions themselves." *Id.* (quoting *Terminal R.R. Ass'n,* 318 U.S. at 7, 63 S.Ct. at 423).

The Court in *Hawaiian Airlines* discussed three examples of state-law substantive protections that it considered to be independent of any labor agreement for the purposes of the RLA. *A claim based on a state law prohibiting employers from firing employees "in violation of public policy or in retaliation for whistleblowing," does not require an interpretation of a CBA, and thus is not preempted, id. at 258, 114 S.Ct. at 2246, even if the CBA in question contained provisions that could be interpreted to justify the termination, id. at 266, 114 S.Ct. at 2251.* Similarly, a claim based on a state law requiring cabooses on all trains is not preempted by the RLA, even if the CBA required cabooses only on some trains. *See id.* at 256–57, 114 S.Ct. at 2246 (citing *Terminal R.R. Ass'n*). Finally, a claim based on a state law "regulating the number of workers required to operate certain [railroad] equipment" is not preempted, *see id.* (citing *Missouri Pac. R.R. Co. v. Norwood,* 283 U.S. 249, 51 S.Ct. 458, 75 L.Ed. 1010, *modified on other grounds,* 283 U.S. 809, 51 S.Ct. 652, 75 L.Ed. 1428 (1931)), even if the railroad's agreement with the union allows it to employ a smaller crew, *id.* at 254, 51 S.Ct. at 461.

\* \* \* \* \* \*

As these examples demonstrate, a claim is preempted by the RLA only if it relies on the interpretation of a provision of the CBA; if the claim is brought under state law without any reference to the CBA, then it is not preempted. Thus, where an

employer has a state-law obligation "wholly apart from any provision of the CBA," claims brought to enforce the state-law obligation are not preempted by the RLA. *Id.* at 258–60, 114 S.Ct. at 2247. *A state-law claim is independent "even if dispute resolution pursuant to a collective-bargaining agreement, on the one hand, and state law, on the other, would require addressing precisely the same set of facts, as long as the state-law claim can be resolved without interpreting the agreement itself...."* *Id.* at 262, 114 S.Ct. at 2249 (quoting *Lingle,* 486 U.S. at 408, 108 S.Ct. at 1883).

Hirras contends that her intentional infliction of emotional distress claim does not rely on any provision of the CBA, and thus its resolution does not require an interpretation of the CBA. Amtrak, on the other hand, argues that we must interpret the CBA in order to determine whether its handling of the harassment was "outrageous." To prove intentional infliction of emotional distress, Hirras must demonstrate that: "(1) the defendant acted intentionally or recklessly, (2) the conduct was extreme and outrageous, (3) the actions of the defendant cause the plaintiff emotional distress, and (4) the emotional distress suffered by the plaintiff was severe." *Twyman v. Twyman,* 855 S.W.2d 619 (Tex. 1993) (citing Restatement (Second) of Torts § 46 (1965)). Amtrak contends that whether its handling of the harassment was substandard to the point of outrageousness, a necessary finding, turns on what standard it was expected to meet under the CBA. However, this Circuit has unequivocally stated that "outrageous conduct is that which '[goes] beyond all possible bounds of decency, and [is] regarded as atrocious, and utterly intolerable in a civilized community.'" *See Daniels v. Equitable Life Assurance Soc'y of United States,* 35 F.3d 210, 216 (5th Cir.1994) (quoting Restatement (Second) of Torts § 46, cmt. d).

(footnotes omitted) (emphasis supplied).

Norfolk Southern argues that its motivation for terminating Johnson can be found in the CBA provision giving the employer the right to administer discipline for "conduct unbecoming an employee." This argument is not efficacious under the *Hirras* rationale. Without ruling on what evidence Norfolk South can offer at trial to rebut Johnson's claim that his jury service was his employer's only motivation for firing him, and assuming *arguendo* that whether or not Johnson's conduct as a juror was "unbecoming of an employee" is material evidence, the assertion is not so inexorably intertwined with Johnson's state law claims as to require an application or interpretation of the CBA.

Because this court agrees with *Hirras,* Johnson's motion to remand will be granted by separate order.