# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 99-2363

_____

Andrew L. Gore,                                  *
                                                 *
        Appellant,                               *
                                                 *       Appeal from the United States
v.                                               *       District Court for the
                                                 *       Western District of Missouri.
Trans World Airlines, a Delaware                 *
corporation; Thomas J. Clossick;                 *
James Nass; Harold Smallwood;                    *
Kenneth Gabriel; Rollin O. Parker,               *
                                                 *
        Appellees.                               *

_____

Submitted: December 16, 1999
Filed: April 26, 2000

_____

Before BEAM, HEANEY, and HANSEN, Circuit Judges.

_____

HANSEN, Circuit Judge.

Andrew Gore appeals the district court's[1] dismissal of his case due to preemption under the Railway Labor Act (RLA), 45 U.S.C. §§ 151-163, 181-188 (1994 & Supp. II 1996). We affirm.

_____

[1]The Honorable Gary A. Fenner, United States District Judge for the Western District of Missouri.

Andrew Gore is employed as a mechanic by Trans World Airlines (TWA) at its Maintenance and Engineering Center, also known as the Overhaul Base, in Kansas City, Missouri. He is a member of the International Association of Machinist and Aerospace Workers, AFL-CIO and the terms of his employment are subject to a collective bargaining agreement.

On the evening of December 15, 1996, Gore was working at the Overhaul Base. While he and coworker Howard Cowher were on a break, another coworker, Harold Smallwood, allegedly overheard Gore telling Cowher that he planned to kill himself as well as other TWA employees. Smallwood reported the comments to union steward Roy Gardner, who in turn reported the comments by telephone to Thomas Clossick, a supervisor in the Facilities Maintenance Department at the Overhaul Base. Clossick telephoned the report to James Nass, who is the Manager of the Facilities Maintenance Department and Clossick's immediate supervisor. Nass consulted with Paul Davis, who is TWA's Employee Relations Manager. Nass then instructed Clossick to get written statements from the coworkers as to Gore's statements and if necessary to call the police.

After reading the coworkers' statements,[2] Clossick called the Kansas City International Airport Police. Gore asserted that Smallwood had not heard the entire conversation and had taken Gore's statements out of context. The police handcuffed Gore and patted him down searching for weapons. They requested permission to search his locker, tool chest, tool box, lunch box, and vehicle. Gore initially denied consent, but after consulting with union stewards, Gore consented to the search of his

---

[2]The statements of Smallwood and Cowher both reported that Gore stated he needed to vent his anger before ending his own life and that he planned to kill TWA employees during a shift change. (See J.A. at 279.)

vehicle and locker. Supervisor Clossick required Gore to turn in his TWA identification badge and parking pass, and he suspended Gore pending a termination hearing.

The following morning, Rollin Parker, a supervisor in the Facilities Maintenance Department at that time, informed his crew members of the occurrence, warned them not to allow Gore onto the premises, and instructed them to call the guard house if Gore attempted to return to the Overhaul Base. Nass held a supervisors' meeting with Parker and Kenneth Gabriel and told them to warn their employees that Gore was a dangerous man. Gore's identification badge photograph was enlarged and posted in various places at the Overhaul Base to enable TWA employees to recognize Gore.

The collective bargaining agreement includes a management rights clause, pursuant to which TWA issued Rules of Conduct and Personnel Regulations, providing in pertinent part that violence, threatening other employees, and firearms are prohibited from the premises and that the company reserves the right to make inspections of employee lockers, desks, lunch boxes, vehicles, and other items of personal property located on the premises when there is reason to believe they may contain prohibited items. Also, the collective bargaining agreement imposes contractual obligations on TWA to protect the safety of its employees. The agreement requires TWA to maintain safe working conditions and to promptly handle complaints involving the safety of working conditions. (See J.A. at 179.) The defendants claim to have acted in accordance with the duties imposed by the collective bargaining agreement.

Gore disputed the truth of the statements made by supervisors advising employees that Gore was dangerous or posed a threat to TWA employees. While on suspension, Gore submitted to a psychological examination which demonstrated that he posed no threat to TWA personnel. Thereafter, the TWA hearing board decided that Gore did not pose a threat and reinstated him with back pay.

3

Gore filed a complaint in federal court against TWA, Clossick, Nass, Smallwood, and Parker, asserting a 42 U.S.C. § 1983 violation along with several state-law claims. The district court granted summary judgment in favor of TWA and Clossick on the § 1983 claim, concluding that they were not state actors and did not act under color of state law. (J.A. at 254.) Having thus disposed of the only federal law claim, the district court declined to exercise supplemental jurisdiction over the remaining state-law claims. This court affirmed the dismissal for lack of a state actor. See Gore v. Trans World Airlines, 163 F.3d 603 (8th Cir. 1998) (unpublished); (J.A. at 255).

Gore then filed an amended complaint in state court, asserting claims of false arrest, negligence, libel and slander, and invasion of privacy for publicly placing him in a false light and public disclosure of private facts. The defendants removed the case to federal district court. Gore filed a motion to remand, which the district court denied upon concluding that "the evaluation of whether the Plaintiff's claims have merit is inextricably intertwined with consideration of terms in the [collective bargaining agreement]." (J.A. at 284.) Noting that the resolution of Gore's claims will require an analysis of both his rights and the defendants' duties under the collective bargaining agreement, the district court determined that the claims are minor disputes preempted by the RLA.

The district court then granted the defendants' motion to dismiss, citing its previous determination that the claims are preempted by the RLA and refusing to reconsider the preemption issue. Gore now appeals the district court's denial of his motion for remand and the dismissal of his complaint on grounds of preemption.

II.

We review the district court's denial of a motion to remand and its dismissal of the complaint on grounds of preemption under a de novo standard. See Schuver v.

4

MidAmerican Energy Co., 154 F.3d 795, 798 (8th Cir. 1998); Taggart v. Trans World Airlines, Inc., 40 F.3d 269, 272 (8th Cir. 1994).

A defendant may remove a state court claim to federal court only if the claim originally could have been filed in federal court, and the well-pleaded complaint rule provides that a federal question must be presented on the face of the properly pleaded complaint to invoke federal court jurisdiction. Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987). A defendant is not permitted to inject a federal question into an otherwise state-law claim and thereby transform the action into one arising under federal law. See id. "Congress has long since decided that federal defenses do not provide a basis for removal." Id. at 399. "Thus, a case may not be removed to federal court on the basis of a federal defense, even if the defense is anticipated in the plaintiff's complaint, and even if both parties admit that the defense is the only question truly at issue in the case." Rivet v. Regions Bank of Louisiana, 522 U.S. 470, 475 (1998) (internal quotations and alterations omitted). To permit removal on the basis of a federal defense would deprive the plaintiff of the right to be the master of his cause of action. See Caterpillar Inc., 482 U.S. at 399.

An independent corollary to the well-pleaded complaint rule is known as the complete preemption doctrine. Id. at 393. The complete preemption doctrine converts an ordinary state-law claim into a federal claim where "the pre-emptive force of a statute is so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" Id. (quoting Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 65 (1987)). Whether federal law preempts a state-law cause of action is a question of congressional intent. Hawaiian Airlines, Inc. v. Norris, 512 U.S. 246, 252 (1994).

"Congress' purpose in passing the RLA was to promote stability in labor-management relations by providing a comprehensive framework for resolving labor disputes." Id. Under the RLA, parties are obligated to arbitrate minor disputes, which

5

are controversies arising out of the application or interpretation of the collective bargaining agreement, and therefore, complete preemption applies to disputes involving duties and rights created or defined by the collective bargaining agreement. See id. at 256-59. Claims of preemption under the RLA are governed by a standard that is "virtually identical" to that employed under § 301 of the Labor and Management Relations Act (LMRA), 29 U.S.C. § 185; under this standard, "a state-law cause of action is not pre-empted by the RLA if it involves rights and obligations that exist independent of the [collective bargaining agreement]." Norris, 512 U.S. at 260.

"[W]here the resolution of a state law claim depends on an interpretation of the [collective bargaining agreement], the claim is pre-empted." Id. at 261 (discussing favorably the analysis set forth in Lingle v. Norge Div. of Magic Chef, Inc, 486 U.S. 399 (1988)). However, "'purely factual questions' about an employee's conduct or an employer's conduct and motives do not 'requir[e] a court to interpret any term of a collective-bargaining agreement.'" Id. (quoting Lingle, 486 U.S. at 407) (alteration in original). Also, a mere need to reference or consult a collective bargaining agreement during the course of state court litigation does not require preemption. See id. at 261 n.8. Our preemption analysis focuses on a determination of whether the state-law claim "confers nonnegotiable state-law rights on employers or employees independent of any right established by contract, or, instead, whether evaluation of the tort claim is inextricably intertwined with consideration of the terms of the labor contract." Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 213 (1985) (cited favorably in Norris, 512 U.S. at 260-61); see Taggart, 40 F.3d at 272 (noting that "the critical question is one of characterization--does the state law claim involve interpretation or application of the collective bargaining agreement").

In this case, the district court concluded that Gore's state-law claims are preempted because they are inextricably intertwined with a consideration or interpretation of the collective bargaining agreement. Gore asserts that his state-law claims exist independent of the collective bargaining agreement and are not preempted.

6

Our review of Missouri law, however, convinces us that the rights asserted in Gore's tort suit are not nonnegotiable, independent state-law rights. Instead, the facts of this tort suit make it "inextricably intertwined with consideration of the terms of the labor contract." Allis-Chalmers Corp., 471 U.S. at 213.

Gore's complaint alleges claims of false arrest, negligence, libel and slander, and invasion of privacy (both by placing Gore in a false light and by disclosing private facts). While state law has created these tort actions, the collective bargaining agreement is the defining source of the duties specifically owed by the defendants for each claim asserted. "The essence of the cause of action of false arrest, or false imprisonment, 'is the confinement, without legal justification, by the wrongdoer of the person wronged.'" Rustici v. Weidemeyer, 673 S.W.2d 762, 767 (Mo. 1984) (en banc) (quoting Warrem v. Parrish, 436 S.W.2d 670, 672 (Mo. 1969)). To prevail on this claim, the plaintiff bears the burden to demonstrate that the defendants' actions were done "without legal justification." Gore's complaint pleads this essential element generically, avoiding any mention of the relative rights and duties contained within the collective bargaining agreement. The defendants have indicated that their actions were required according to their interpretation of specific provisions in the collective bargaining agreement.

While we are mindful that removal cannot be invoked on the basis of facts not alleged in the complaint, see Caterpillar Inc., 482 U.S. at 397, we are also constrained by the artful pleading doctrine--the principle that "a plaintiff may not defeat removal by omitting to plead necessary federal questions." Rivet, 522 U.S. at 475 (internal quotations omitted). When a plaintiff has artfully pleaded in a manner that avoids an element of the tort that rests on federal law, the court "may uphold removal even though no federal question appears on the face of the plaintiff's complaint." Id.; see also Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 397 n.2 (1981) (quoting a treatise stating that courts will not permit artful pleading to close off a defendant's right to a

7

federal forum and will seek to determine whether the real nature of the claim is federal, regardless of plaintiff's characterization).

While Gore's complaint avoids mention of the collective bargaining agreement, it indicates that the actions took place in the course and scope of the defendants' employment with TWA, a relationship in fact governed by a collective bargaining agreement that specifically requires TWA to provide a safe working environment and to promptly investigate and handle complaints relating to worker safety. Employers and employees are free to negotiate what actions an employer may take to preserve the safety and security of the workplace and the safety of other employees. Given the fact that Gore's alleged statements caused a serious security concern in the workplace, Gore's burden to prove that he was falsely arrested without legal justification will necessarily require an interpretation of the collective bargaining agreement to determine whether the defendants acted contrary to their duties under the agreement. Thus, this claim is not based on an independent state-law right but is inextricably intertwined with the provisions of the collective bargaining agreement. Therefore, the claim is preempted.

Likewise, Gore's libel and slander claims will require the court to construe whether the defendants' actions conformed to the rights and duties created under the collective bargaining agreement. "The elements of defamation in Missouri are: 1) publication, 2) of a defamatory statement, 3) that identifies the plaintiff, 4) that is false, 5) that is published with the requisite degree of fault, and 6) damages the plaintiff's reputation." Overcast v. Billings Mut. Ins. Co., 11 S.W.3d 62, 70 (Mo. 2000) (en banc). The element requiring a showing that the statement was published with the requisite degree of fault will need to be evaluated within the framework of the contract terms governing the standard by which TWA must handle employee safety complaints. The defendants assert that their actions were required by specific provisions of the collective bargaining agreement. Again, artful pleading has avoided the fact that the

8

collective bargaining agreement is inextricably intertwined with the resolution of this dispute.

The same can be said about Gore's claim of negligence. In the circumstances presented in this case, where simple negligence is claimed in the manner in which TWA employees (acting within the course and scope of their employment) investigated a claim of a threat to other employees, the collective bargaining agreement is the source of the duty of care owed. The duty allegedly breached is defined by the agreement that governs the employment relationship. See Allis-Chalmers Corp., 471 U.S. at 216 (noting that preemption applies if the extent of the duty ultimately depends upon the terms of the agreement between the parties). When the collective bargaining contract is the source of the duty allegedly breached, application of the tort remedy is preempted. See Lingle, 486 U.S. at 405 & n.4.

Finally, Gore claims violations of his right to privacy because TWA employees published private facts and placed him in a false light. These state-law torts require a showing that the other party unreasonably obtained private information or that the disclosure would be highly offensive to a reasonable person. See St. Anthony's Med. Ctr. v. H.S.H., 974 S.W.2d 606, 610 (Mo. Ct. App. 1998) (stating the elements of the tort of publishing private facts); Sullivan v. Pulitzer Broad. Co., 709 S.W.2d 475, 478 n.5 (Mo. 1986) (en banc) (stating the elements of placing another in a false light). The duties owed and the reasonableness of the parties' actions in these circumstances cannot be evaluated independently from the bargained-for terms of the collective bargaining agreement. The extent of the plaintiff's privacy rights in this matter were legally negotiated by the terms of the collective bargaining agreement, and therefore, the resolution of these tort claims is inextricably intertwined with an interpretation of the rights and duties created by the collective bargaining agreement.

Gore contends that his claims are purely factual, that the collective bargaining agreement need only be referenced during the state court litigation (not interpreted),

and that justification defenses grounded in rights and duties created by the collective bargaining agreement do not give rise to preemption, citing Norris and Meyer v. Schnucks Markets, Inc., 163 F.3d 1048 (8th Cir. 1998). We disagree. Gore's claims are not purely factual but are rooted in an interpretation of the collective bargaining agreement. We do not hold that removal and preemption may be based on a federal defense. Instead, we have concluded that Gore cannot be successful on the claims he has pleaded in this factual situation without interpreting certain terms of the collective bargaining agreement that govern the rights and duties of the parties. Additionally, we find the facts of Norris and Meyer distinguishable from the facts at hand.

In Norris, the plaintiff alleged that he was discharged in violation of state public policy and the state whistle-blower protection law. The Court held that these claims are not preempted because they are grounded in independently created state-law rights involving purely factual questions. See 512 U.S. at 266. To the contrary, for Gore to prove the elements of the torts he alleged in this case, he will be required to argue the meaning of standards or duties created and defined by the governing collective bargaining agreement. Because the collective bargaining agreement provides the source of the duties allegedly breached or governs the determination of reasonableness under the state law, the resolution of Gore's tort claims will require more than a mere tangential reference to the collective bargaining agreement, even though Gore's complaint omits any reference to the collective bargaining agreement. The Court in Norris expressly recognized that "where the resolution of a state-law claim depends on an interpretation of the [collective bargaining agreement], the claim is preempted." 512 U.S. at 261.

In the same manner, the Meyer case from our court is distinguishable. In Meyer, we held that Meyer's state-law claims of slander, tortious interference with a business relationship, and retaliatory transfer were not preempted by the LMRA. The facts, however, are far different from Gore's case. In Meyer, the plaintiff alleged that in retaliation for his criticism of his employer's improper sanitation procedures in handling

meat, the company allowed supervisors to harass him and criticize him publicly. 163 F.3d at 1049. We stated that complete preemption occurs when the plaintiff's claim "require[s] the interpretation of some specific provision of a [collective bargaining agreement]." Id. at 1051. We concluded, however, that the causes of action alleged in that particular context were neither based on nor substantially dependent upon an interpretation of the collective bargaining agreement. Id. (also noting that although the facts of the complaint occurred while the plaintiff was on the job, "the claims themselves are not inherently tied to any provision of the relevant [collective bargaining agreement]").

To the contrary, Gore asserts facts that occurred while the defendants were seeking to respond, according to their duties under the collective bargaining agreement, to a perceived security threat to many employees. The defendants have set forth specific provisions of the collective bargaining agreement that they contend governed their actions and prescribed their duties in this factual scenario. Gore cannot establish liability on his tort claims without demonstrating that the defendants' actions were wrongful under a proper interpretation of the relevant rights and duties bargained for in the collective bargaining agreement.

## III.

Accordingly, we affirm the judgment of the district court.

HEANEY, Circuit Judge, dissenting.

The majority opinion is inconsistent with the United States Supreme Court's decision in Hawaiian Airlines, Inc. v. Norris, 512 U.S. 246 (1994), and with the decisions of this circuit in Taggart v. Trans World Airlines, Inc., 40 F.3d 269 (8th Cir. 1994), Luecke v. Schnucks Mkts., Inc., 85 F.3d 356 (8th Cir. 1996), and Meyer v.

11

Schnucks Mkts., Inc., 163 F.3d 1048 (8th Cir. 1998), and for that reason, I respectfully dissent.[3]

Justice Blackmun, writing for the Court in Norris, reviewed the scope of federal preemption under the RLA in a case involving a state law claim brought by an aircraft mechanic alleging he was discharged for refusing to certify a plane that he considered unsafe and for reporting his safety concerns to the FAA. The Court held that Norris's state law claim was not preempted even though he also could seek redress through the RLA's arbitral mechanism. The Court stated that "no proposed interpretation [of the RLA] demonstrates a clear and manifest congressional purpose to create a regime that broadly pre-empts substantive protections extended by the States, independent of any negotiated labor agreement." Norris, 512 U.S. at 255-56.

Here, the majority recognizes, and I agree, that the state of Missouri has created tort actions for false arrest, negligence, libel and slander, and invasion of privacy, both by placing Gore in a false light and by disclosing private acts. I part company with the majority, however, in its conclusion that the collective bargaining agreement is the defining source of the duties specifically owed by TWA to Gore. Here, as in Norris, the collective bargaining agreement is not the "only source" of the rights that Gore asserts in his state law claims. See id. at 258. Wholly apart from the collective bargaining agreement, TWA had an obligation not to violate Gore's state law rights. The parties' obligation under the RLA to arbitrate disputes arising out of the application or interpretation of the collective bargaining agreement does not relieve the company of this duty, nor does it deprive an employee of his opportunity to bring a state law

[3]I recognize that some of the cases I rely upon involve preemption questions under the Labor Management Relations Act (LMRA). I agree with the majority that preemption analysis under the LMRA and the RLA is virtually identical. See Norris, 512 U.S. at 263 n.9.

12

action for damages.  See id.  Here, as in Norris, we have purely factual questions about an employee's conduct, the employer's response to that conduct, and its motives for so responding.

The majority's argument that resorting to the collective bargaining agreement is necessary to determine where state statutes have been violated is foreclosed by the Supreme Court's decisions in Lingle v. Norge Division of Magic Chef, Inc., 486 U.S. 399 (1988), and in Norris, holding that the issue of whether an employer's action establishes the elements of a claim under state law is purely a factual question.  Norris's impact on the jurisprudence relating to an employee's right to bring a state law action in RLA cases is illustrated by the pre- and post-Norris decisions in the Fifth Circuit case of Hirras v. National R.R. Passenger Corp., 10 F.3d 1142, cert. granted and judgment vacated, 512 U.S. 1231 (1994).  There Hirras asserted, inter alia, a state law claim for intentional infliction of emotional distress based on verbal abuse by co-workers, abusive telephone calls from unknown sources, and offensive graffiti.  The district court held that the claim was preempted by the RLA; the Fifth Circuit affirmed.  On certiorari, the Supreme Court vacated the decision and remanded to the Fifth Circuit for reconsideration in light of Norris.  On remand, the Fifth Circuit rejected the employer's argument that a state law claim for intentional infliction of emotional distress arises out of the collective bargaining agreement because the agreement determines the standard by which the employer's conduct is judged.  See Hirras v. National R.R. Passenger Corp., 44 F.3d 278 (5th Cir. 1995).  The similarity between Hirras and this case should dictate the same result, one which the majority eschews.

I thought that this court settled the questions raised here in the two Schnucks cases.  In Luecke v. Schnucks Mkts., Inc., 85 F.3d 356 (8th Cir. 1996), an employee brought an action for defamation against his employer, Schnucks Markets, alleging that the employer told others that he refused to take a drug test.  Schnucks argued that resolving the defamation claim depended on an analysis of the collective bargaining agreement's clauses regarding management rights and establishing a grievance

procedure. We held that the claim was not preempted because the issue could be determined based on whether the employee took the drug test, whether the company's statement that he refused was false, and whether it was made with malice. Similarly, here the questions to be answered are whether Gore was confined without legal justification, and whether Gore was libeled or slandered. The first question can be answered without reference to the collective bargaining agreement. Either the employer was justified or it was not. Although TWA's justification defense may be based on the collective bargaining agreement, the agreement would at most be consulted, and not interpreted. Whether Gore was libeled or slandered can be answered by determining whether TWA made a defamatory false statement about Gore, published it with the requisite intent, and in so doing damaged Gore, all questions that can be answered without interpreting the collective bargaining agreement. This reasoning applies equally to the privacy and negligence claims.

In Meyer v. Schnucks Mkts., Inc., 163 F.3d 1048 (8th Cir. 1998), John Meyer, a meat cutter, brought a state law action for slander, intentional infliction of emotional distress, and other claims. Schnucks removed the case to federal court alleging preemption. The district court held some claims were preempted; others were not. It then granted summary judgment on the non-preempted claims. Our court reversed, holding that none of the plaintiff's claims were preempted. We stated:

> Although the events underlying Mr. Meyer's complaint occurred on the job, the claims themselves are not inherently tied to any provision of the relevant CBA. To prove slander, Mr. Meyer will have to produce evidence that Mr. Jansen made false statements that injured Mr. Meyer's reputation. The elements of tortious interference with a business relationship are the existence of a contract or of a valid business expectancy known to the defendant, intentional and unjustified interference causing a breach of the contract, and damages. Except for the existence of the valid business expectancy itself, which can be demonstrated by mere reference to the CBA without any analysis of it, neither of these causes of action is based on, or substantially dependent

14

upon an interpretation of, the CBA. Therefore, neither of them is automatically preempted by the LMRA. For similar reasons, we see nothing in the basic elements of the other claims that requires analysis of the CBA for their resolution.

Id. at 1051.

Similarly, any inquiry in this case into the collective bargaining agreement merely would require its consultation, and not interpretation of it. Accordingly, Gore's claims are not be preempted.

For the reasons outlined above, I have no alternative but to dissent.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

15