Kim M. WILSON

v.

**THE LAITRAM CORPORATION**
**and/or Intralox, Inc.**

No. CIV.A. 99–3557.

United States District Court,
E.D. Louisiana.

Feb. 16, 2001.

Wanda Theresa Anderson–Davis, Anderson–Davis & Associates, LLC, New Orleans, LA, for Kim M. Wilson, plaintiffs.

Taryn S. Southon, Maria Nan Alessandra, Phelps Dunbar, LLP, New Orleans, LA, Michael Fredrick Weiner, Shaw Norton, L.L.P., Mandeville, LA, for Laitram Corporation, and/or, Intralox Inc, defendants.

PORTEOUS, District Judge.

Before the Court is defendants', Laitram Corporation and Intralox Inc., Motion for Summary Judgment relating to a claim of race discrimination and retaliation filed on behalf of the plaintiff, Kim M. Wilson. The parties in this matter waived oral argument and the Court took the matter under submission upon the filing of all memoranda December 18, 2000. The Court, having studied the arguments of counsel, the evidence presented, the rec-

ord, the law and applicable jurisprudence, is fully advised in the premises and ready to rule.

### ORDER AND REASONS

## I. BACKGROUND:

Kim M. Wilson, an African–American woman, claims to have been the victim of racially motivated harassment by co-workers and disparate application of the company handbook based upon her race. She further contends that ultimately she was terminated because of her race in retaliation for complaining about the harassment of her co-workers and disparate application of company policy. Said allegations are based upon violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq. ("Title VII"), 42 U.S.C. § 1981, and Louisiana's employment discrimination statutes, La. R.S. 23:301, 51:2242, and 51:2257.

Wilson was hired by Laitram Corporation on September 4, 1999, to work for its subsidiary, Intralox, Inc., for a ninety (90) day probationary period. Wilson was assigned to work the "D" shift from 7:00 p.m. to 7:00 a.m. Stacey Boudreaux, a Caucasian female, was directed to train Wilson in her duties. Barbara White and Charlene Kennie were Wilson's Cell Coordinators, while Charlene Kennie served as Wilson's immediate supervisor. Both White and Kennie are African–American females.

Wilson contends that shortly after commencing work at Intralox, Stacey Boudreaux began harassing her. Wilson submits that she reported the harassment to her Cell Coordinators, Kennie and White, on several occasions; however, no disciplinary action was taken against Stacey Boudreaux. Finally, on November 26, 1998, Stacey Boudreaux was demoted from trainer based upon the continued complaints of Wilson and other employees. Wilson further alleges that Boudreaux recruited other employees, including Sandy Boudreaux, Darlene Bouchereau, Bonnie Hullion, Trudy Gallo, and Anna Galloway, all Caucasian females, to participate in the harassment.

Following the ninety (90) day probationary period, Wilson was notified on November 6, 1998, that she had completed the skills based training and upon passing a physical, drug test, and fit for duty evaluation, she would be placed on the company payroll. On November 25, 1998, Wilson became a full-time regular machine operator.

Wilson alleges that her harassers began to make false accusations to the Cell Coordinators that she was sleeping on the job and taking long breaks. Moreover, Darlene Bouchereau would make sexually offensive comments to Wilson, while Sandy and Stacey Boudreaux would stand over Wilson watching her work. Plaintiff contends that almost on a daily basis, she was called into the office of her supervisors, Cell Coordinators, White and Kennie, Cell Representative, Bobbie McCray, and Cell Trainer, Anna Galloway, to discuss the allegations that were being made against her by her harassers. The accusations and harassment began to disturb Wilson and she perceived her work environment as hostile.

Several things occurred on February 6, 1999. Upon her arrival at work, Wilson was given a verbal reprimand for excessive tardiness evidenced by a Disciplinary Action Form signed by Charlene Kennie. Plaintiff's Exhibit I. Later that evening, after returning from the restroom, Wilson found a letter on her desk with a picture of a distastefully drawn woman with hair sticking out on her head with the words, "Don't make me open a can of whup butt young lady. SMILE! P.S.—no I don't have anything better to do." Plaintiff's Exhibit H. Also on that date, Stacey Boudreaux reported to Kennie that Wilson had been sleeping on her machine. Kennie called Wilson to her office to discuss the matter and then sent Wilson back to her machine to resume her work. Later that evening, Stacy Boudreaux went back to Kennie with additional accusations of a

verbal exchange between she and Wilson which was allegedly witnessed by Darlene Bouchereau. Kennie again called Wilson, along with Darlene Bouchereau, to her office to discuss the matter and attempt to resolve the situation. It was at this meeting, that Bouchereau allegedly began cursing at Wilson calling her a "black son of a bitch", "nigger", and that she would kick Wilson's "ass". Around 4:55 a.m. on the morning of February 7, 1999, Kennie suspended both Wilson and Bouchereau and advised them that they could not return to work until they spoke to David Lowry, Plant Manager and supervisor for Kennie. Wilson contends that Bouchereau continued to threaten her that evening; therefore, she asked two male employees, Neally Owens and Earl Hughes, to wait with her until her ride came.

After being sent home, Bouchereau called Lowry at his home and woke him up to discuss the matter with him. Later that morning, Lowry spoke with Kennie about the incident and instructed her to notify Wilson that she could report to work that evening for her regular shift at 7:00 p.m. On that evening, February 7, 1999, Wilson contends that she saw Lowry talking and laughing with her harassers. Later, Lowry along with Kennie called Wilson into his office to discuss what had happened the night before. Then on February 8, 1999, Lowry advised Wilson not to attend the training program she had been scheduled to attend. Three days later, on February 11, 1999, Lowry terminated Wilson advising that the reason for her termination was poor job performance, namely tardiness and the allegations/admissions of sleeping on the job.

Following her termination, Wilson met with Jamie Burmaster, Plant Manager, and followed their discussion with a letter dated February 19, 1999, outlining what she perceived to be the events surrounding her termination. Human Resources Manager, James Evans, was then apprised of the situation who conducted an investigation into the matter. Evans was unable to find any support for Wilson's allegations of wrongful termination or racial harassment.

Wilson filed a claim with the Equal Employment Opportunity Commission ("EEOC"). The EEOC likewise found no cause to support a claim for race discrimination, racial hostile work environment, nor retaliation, thus a dismissal and notice of rights was issued. This lawsuit ensued leading to the defendants' Motion for Summary Judgment.

## II. ARGUMENTS OF THE RESPECTIVE PARTIES:

### A. Arguments of the defendants, Laitram Corporation and Intralox, Inc. in support:

Defendants argue that Wilson's claims of discrimination and retaliation must be dismissed. Wilson cannot show that she was replaced by a person who is not a member of her protected class. The evidence submitted shows that no one was hired to replace Wilson; rather, employees were hired as needed. Of the ninety (90) people hired for operator positions for all shifts after Wilson's termination to date, seventy-nine (79) (or .88%) were African–American. With regard to the actual shift to which Wilson was assigned, thirty-four (34) of the thirty-six (36) operators hired (or 95%) were African–American. Accordingly, Wilson cannot establish a key element of her prima facie case of race discrimination.

Likewise, it is asserted that Wilson cannot show retaliation as she has no evidence of a causal connection between her alleged complaint and her discharge. Wilson must establish that the persons who made the challenged decision were aware of the alleged complaints and took adverse action because of the complaints. Wilson has no evidence that anyone involved in the decision to terminate was aware of any alleged complaints of race discrimination or racial harassment. Both Kennie and Lowry denied that, during the course of Wilson's employment, Wilson or anyone else at Lai-

tram or Intralox ever reported to them that anyone had retaliated or discriminated against Wilson. Causal connection is lacking as Lowry testified that he decided to discharge Wilson after she admitted to him that she had "nodded off" on the job; that decision is not the result of retaliation.

Moreover, defendants contend that Wilson cannot prove that unlawful discrimination was the real reason for her discharge. The alleged racial remarks occurred in the context of one argument with a co-worker, Bouchereau, on one occasion. Furthermore, the picture plaintiff complains about is not overtly racial and involves no racial slurs or overtones.

In regards to unequal application of company policy, the defendants submit that Wilson fails on this claim as well. Wilson admitted that both she and Bouchereau were sent home in connection with their argument; thus, no preferential treatment was provided Bouchereau. Additionally, Stacey Boudreaux was not treated preferentially evidenced by her demotion from trainer to the entry-level operator position. Moreover, eight (8) out of twenty (20) (or 40%) of the employees terminated by Intralox for poor performance following Wilson's termination were Caucasian; as such, there is nothing to suggest discrimination or unequal application of the company's handbook based upon race.

Even if plaintiff successfully met her prima facie showing, the defendants have stated a valid, non-discriminatory reason, poor performance, in part based upon Wilson's admission of sleeping on the job, for the termination. As such, defendants possessed no discriminatory intent. Wilson's sleeping on the job was reported and documented not only by her Caucasian co-workers, but also, by her African–American supervisor, Barbara White.

Next, defendants argue that when harassment is perpetrated by a co-worker, the employer is liable only under a negligence standard. To prevail, a plaintiff must show that the employer knew or should have known about the harassment and failed to take prompt, remedial action. Wilson readily admits that all of her harassers were non-supervisory co-workers. Kennie and Lowry both stated that at no time were reports of retaliation, racial harassment, or discrimination against Wilson reported to them. Even if knowledge was to be imputed to them, an investigation was promptly conducted on all issues raised by Wilson's post-termination letter to Jamie Burmaster.

Moreover, defendants contend that Wilson cannot maintain a hostile work environment cause of action as the racial remarks allegedly made occurred solely in the context of one argument, on one occasion, by a co-worker who was in no way involved in the decision to terminate. Wilson cannot establish that the remarks made or the picture she found objectionable were sufficiently severe or pervasive so as to alter the condition of her employment and create an abusive working environment.

It is further asserted by the defense that the same actor rule infers no discrimination. Kennie recommended that Intralox hire Wilson and then later recommended that she be terminated for poor performance. Kennie is an African–American which further enhances the same actor rule.

Finally, defendants contend that punitive damages are not recoverable in this case as Wilson cannot show that she was retaliated against or discriminated against based upon acts of malice or reckless indifference by her employer.

## B. Arguments of the plaintiff, Wilson, in opposition:

Wilson argues that she has clearly set forth a prima facie case for discrimination and retaliation. First, she is African–American. Next, Wilson was qualified for the position, as stated by Lowry in an e-mail, wherein he states that Wilson was

one (1) of four (4) temporary employees being offered full-time employment. Third, Wilson suffered an adverse effect through termination on February 11, 1999. Finally, Wilson did not violate the work rule for which she was allegedly terminated and even if she had, there was differential application of the rule.

Intralox stated in Response to Interrogatories that the primary reason for termination was Wilson sleeping on the job and getting backed up in her work. Other considerations included tardiness and inability to perform the duties of her job at a satisfactory level over a period of time. However, Kennie testified in her deposition that she never personally witnessed Wilson sleeping on the job nor observed her being backed up in her work. Kennie depo., pp. 56, 57, 76. Wilson denies ever sleeping on the job and instead contends that the allegations made by her co-workers were race related in an effort to get her fired. Barbara Rodgers, Wilson's Cell Representative, likewise testified that she had never observed Wilson displaying poor performance. As such, plaintiff contends that an issue of fact exists regarding whether a violation of the work rule ever occurred.

Next, plaintiff sets forth that the company handbook was applied differently in that white employees were not terminated for job performance and/or tardiness violations. The handbook sets forth a progressive policy of discipline. First verbal warnings are issued. Next, a written warning is issued for specific behavior or performance. Third, a final written warning is issued by a supervisor warning of possible discharge, which may be accompanied by a disciplinary probationary period. Finally, an employee may be terminated. In unusual circumstances, the company may however impose harsher disciplinary action than listed above.

Plaintiff contends that the personnel records of the white harassing employees evidence differential treatment. Stacey Boudreaux had multiple work performance problems however she was not terminated, but was instead given documented warnings by Lowry and Kennie. Trudy Gallo, received a verbal warning for having three "occurrences" within a thirty (30) day period. All disciplinary warnings and attendance records were missing from the personnel file of Sandy Boudreaux. The performance evaluation prepared on Sandy Boudreaux however evidences numerous performance and tardiness problems. Anna Galloway received verbal warnings for poor job performance and attendance which were signed and acknowledged by the employee. Galloway was additionally issued a disciplinary warning for trying to get a co-worker in trouble with the supervisor by falsifying information and trying to discredit the supervisor by making accusations to another employee. Bonnie Hullion's record shows five separate warnings. As such, despite the multiple disciplinary actions filed against Hullion, the employer continued to adhere to the company's disciplinary policy, which was not done in the case of Wilson. Finally, Darlene Bouchereau's personnel file contains a disciplinary warning for threatening Wilson; however said warning was not issued until February 25, 1999, for the February 6, 1999 violation, three (3) days after Wilson's letter to Jamie Burmaster.

Plaintiff submits that there is only one documented incident of sleeping on the job, written by Barbara White, allegedly on February 2, 1999. It should be noted that this alleged verbal warning for "working overtime without proper rest", which Wilson denies receiving, is written in the middle of two entries dated February 6, 1999, the first entry for "time & attendance" and the third entry regarding being sent home following the altercation with Bouchereau. Defendant's Exhibit B to Charlene Kennie's Affidavit. Wilson also denies receiving the one disciplinary warning for tardiness that was not given until the same day as the dispute between she and Bouchereau. Moreover, the one disci-

plinary warning allegedly received was not signed or dated by Wilson as done in other cases. Additionally, Kennie and Lowry admitted that they did not offer Wilson an opportunity to explain her tardiness.

While Intralox contends that the termination decision was based upon poor job performance, plaintiff submits that the testimony is contradictory. Lowry testified that the termination was recommended by Wilson's supervisors, Barbara White and Charlene Kennie. Barbara White however testified that she at no time told Lowry that Wilson did not pull her own weight, was not a team player, did not work to help others catch up, did not relieve other workers on break, was not moving from machine to machine, that she was incapable of operating more than one machine, that she was not doing her work as a full-time operator, that she was slow, that she had an attendance problem, nor that she had a tardiness problem. White further stated that Lowry did not question her about Wilson at any time before she was terminated. Kennie however did testify that she had met with Lowry and recommended that Wilson be terminated based upon the ongoing problem of her performance and sleeping on the job. As such, plaintiff contends material issues of fact exist as to the true reason for the termination in this case.

## III. LAW AND ANALYSIS:

### A. Law on Summary Judgment:

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). "The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which it be-

lieves demonstrate the absence of a genuine issue of material fact." *Stults v. Conoco*, 76 F.3d 651 (5th Cir.1996), (citing *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 912–13 (5th Cir.)) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. The nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (emphasis supplied); *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir.1995).

Thus, where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial." *Matsushita Elec. Industrial Co.*, 475 U.S. at 588, 106 S.Ct. 1348. Finally, the Court notes that substantive law determines the materiality of facts and only "facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### B. Law on Race Discrimination Claims:

In a Title VII race discrimination case, plaintiff has the initial burden of establishing a *prima facie* case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). In order to meet this initial burden, plaintiff must demonstrate: (1) that she was a member of a protected class; (2) that she was qualified for the position in question; (3) that she was discharged from that position; and, (4) that she was either replaced by someone outside the protected class or otherwise discharged because of the protected trait. *See McDonnell Douglas Corp. v. Green*,

411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Bodenheimer v. PPG Industries, Inc.* 5 F.3d 955, 957 (5th Cir. 1993).

Once plaintiff has set forth a prima facie case of discrimination, the burden shifts to the employer to produce a legitimate, non-discriminatory reason for its employment action. *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1087 (5th Cir.1994). "This burden is one of production, not persuasion; it 'can involve no credibility assessment.'" *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 530 U.S. 133, 120 S.Ct. 2097, 2106, 147 L.Ed.2d 105 (2000) (quoting *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 509, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)). The presumption of unlawful discrimination disappears once the employer offers admissible evidence that is sufficient for the trier of fact to conclude that there was a legitimate reason for the discharge. *See id.*

■ Because the ultimate burden of proving discrimination lies at all times with the plaintiff, she is then afforded the opportunity to prove that the employer's proffered reasons for termination were not true and that the true reason was, in fact, discrimination. *See id.* The Supreme Court ruled in *Reeves* that a *prima facie* showing of the elements of an employment discrimination claim in conjunction with substantial evidence that the employer's stated reason for termination was pretextual, could alone, with no additional evidence of discrimination being offered by the plaintiff, allow a reasonable jury to infer that the employer's motivation for the termination was discriminatory. *See* 120 S.Ct. at 2106. However, the *Reeves* Court did caution:

> [t]his is not to say that such a showing by the plaintiff will always be adequate to sustain a jury's finding of liability. Certainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could con-

clude that the action was discriminatory. For instance, an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred.

*Id.* at 2108. Thus under *Reeves,* summary judgment is appropriate, even after a *prima facie* showing of a discrimination claim has been made, if a reasonable factfinder could not find that the employer's nondiscriminatory explanation for the termination was false.

In this case, as the basis for her race discrimination claim, plaintiff argues that she was subjected to racially motivated harassment and that there was disparate application of the disciplinary rules and policy of the company for Caucasian and African–American employees. There is no dispute that plaintiff is a member of a protected class as an African–American female. The plaintiff has made an adequate showing for purposes of this motion that she was qualified for the position, as stated by David Lowry in an E-mail dated November 5, 1998, wherein he states that Kim Wilson was one (1) of four (4) temporary employees being offered full-time employment because "these are the ones we are comfortable and confident in." Plaintiff's Exhibit J. Clearly, she suffered an adverse effect to her employment through termination on February 11, 1999. Plaintiff's Exhibit K. While tardiness is named as a factor leading to her discharge, the only documentary evidence of warnings on this charge is dated February 6, 1999, the same date as the altercation with Bouchercau. Moreover, there has been no evidence presented of other disciplinary warnings, verbal or written, regarding Wilson's job performance.

The Court finds that based upon the evidence presented, genuine issues of material fact exist in regards to this claim. Reasonable jurors could differ on whether the non-discriminatory reason proffered by the defendant was pretextual for race discrimination. Accordingly, it is the opinion of this Court that based upon the record and documentation submitted it is possible for a reasonable fact finder to conclude that plaintiff has a valid cause of action for race discrimination.

## C. Law on Retaliation Claims:

A retaliation claim under Title VII, 42 U.S.C. § 2000e–3(a), has three elements: (1) the employee engaged in activity protected by Title VII; (2) an employer took adverse action against the employee; and, (3) a causal connection exists between the protected activity and the adverse employment action. *Webb v. Cardiothoracic Surgery,* 139 F.3d 532 (5th Cir.1998), *Grimes v. Texas Department of Mental Health, et al.,* 102 F.3d 137, 140 (5th Cir. 1996); citing *Long v. Eastfield College,* 88 F.3d 300, 304 (5th Cir.1996); *Shackelford v. Deloitte & Touche, L.L.P.,* 190 F.3d 398, 404 (5th Cir.1999). The establishment of a prima facie case gives rise to an inference of retaliation. *Id.* The burden then shifts to the defendant who may rebut the presumption by articulating a legitimate, non-discriminatory reason for its actions. *Id.* If the defendant satisfies this burden, the plaintiff must prove the proffered reasons were pretextual. *Id.*

In this case, the plaintiff contends that a jury could believe that the termination by Lowry was in retaliation for Kim Wilson complaining about the conduct of Darlene Bouchereau and "defending herself against a bully". It is the opinion of this Court, that the evidence presented along with the events in the days prior to the termination and timing of the discharge create sufficient issues of material fact which render this motion for summary judgment inappropriate. As such, plain-

tiff's retaliation claim will survive this motion for summary judgment.

## D. Law on Racial Harassment:

The law provides that if the harasser has no supervisory authority over the employee, as in the case of harassment by a co-worker, the employer is liable only under a negligence standard. To prevail, a plaintiff claiming harassment by a fellow employee must show that the employer knew or should have known about the harassment and failed to take prompt, remedial action. *Hirras v. National R.R. Passenger Corp.,* 95 F.3d 396, 399 (5th Cir.1996). The plaintiff bears the burden of showing that his employer failed to take effective action. *Skidmore v. Precision Printing and Pkg., Inc.,* 188 F.3d 606, 616 (5th Cir.1999).

Wilson has stated that all of her "harassers" were non-supervisory co-workers. Wilson depo., pp. 53, 66. Wilson contends that Charlene Kennie was made aware of the harassment. There is further testimony submitted that Wilson was called into the offices of her supervisors on "almost a daily basis" to discuss the allegations that were being made against her about sleeping on the job. Wilson depo., p. 42, Kennie Affidavit. Defendants on the other hand have produced the affidavits of Kennie and Lowry who attest to the fact that during Wilson's employment with the company, neither Wilson, nor anyone else at Laitram or Intralox ever reported to them that anyone had retaliated, racially harassed, or discriminated against Wilson. As such, it is the opinion of this Court that genuine issues of material fact exist regarding whether defendants knew of racial harassment being perpetrated on Wilson, and further, whether or not the company failed to take remedial action. Accordingly, summary judgment on this claim will likewise be denied.

## E. Law on Hostile Work Environment Claims:

To establish a claim of hostile work environment discrimination, plaintiff must

prove the following elements: "(1) [Racially] discriminatory intimidation, ridicule and insults, which are (2) sufficiently severe or pervasive that they (3) alter the conditions of employment and (4) create an abusive working environment." *DeAngelis v. El Paso Mun. Police Officers Ass'n,* 51 F.3d 591, 594 (5th Cir.1995), *cert. denied,* 516 U.S. 974, 116 S.Ct. 473, 133 L.Ed.2d 403 (1995), *citing, Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993).

The Fifth Circuit recognized that racially discriminatory verbal intimidation, ridicule, and insults may be sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment violative of Title VII. *Weller v. Citation Oil & Gas Corp.,* 84 F.3d 191, 194 (5th Cir.1996), *cert. denied,* 519 U.S. 1055, 117 S.Ct. 682, 136 L.Ed.2d 607 (1997), *citing, Harris,* 510 U.S. at 21, 114 S.Ct. at 370. A Court determines whether an environment is sufficiently hostile or abusive by considering all of the circumstances, including the frequency of the conduct or utterances, whether they are physically threatening or humiliating or merely offensive, and whether it unreasonably interferes with an employee's work performance. *Faragher v. City of Boca Raton,* 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662, (1998). Moreover, the Fifth Circuit recognizes that the Supreme Court has "contrasted physically threatening or humiliating conduct, which will support a claim for hostile work environment, from a 'mere offensive utterance,' which will not." *Long v. Eastfield College,* 88 F.3d 300, 309 (5th Cir.1996), citing *Harris,* 510 U.S. at 22, 114 S.Ct. at 371.

The present action involves racial slurs being made on only one occasion, the verbal exchange between Wilson and Bouchereau wherein Bouchereau called Wilson a "black bitch", "nigger", and threatened to "kick her ass". A one time incident is not the type of severe and pervasive harassment that would generally give rise to a cause of action for hostile work environment. However, Wilson contends that the harassment was continual, that her "harassers" would stand over her and watch her work, would make false reports to her supervisors on a daily basis, and that such activity affected her ability to work. As such, this Court finds that this claim, as the others, are best left for the triers of fact to determine after all testimony has been heard and all evidence presented.

Accordingly,

**IT IS ORDERED** that the Motion for Summary Judgment filed on behalf of the defendants, Laitram Corporation and Intralox, Inc., be and the same hereby is **DENIED**.