**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**June 18, 2007**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 05-20909

LESTER LEE,

Plaintiff-Appellant,

VERSUS

DEPARTMENT OF VETERANS AFFAIRS; ANTHONY PRINCIPI, SECRETARY,
DEPARTMENT OF VETERANS' AFFAIRS

Defendants-Appellees

Appeal from the United States District Court
For the Southern District of Texas, Houston Division

Before DAVIS, DENNIS, and PRADO, Circuit Judges.

PER CURIAM:[*]

Lester Lee ("Lee") appeals the district court's order granting summary judgment in favor of his employer, Defendant-Appellee Department of Veterans Affairs ("DVA"), on his Title VII retaliation and race discrimination claims. For the reasons that

---

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

-1-

follow, we AFFIRM in part and VACATE and REMAND in part.

                                    I.

Lee is an African-American male who began working for the DVA in October 1989. Lee worked in the Customer Service/Hardware Maintenance Unit ("CS/HMU") servicing personal computers, video monitors, and other electronic equipment.

In July 1998, Lee and two other African-American employees filed a grievance against the DVA, claiming that white employees were being favored and pre-selected for desirable positions. Specifically, Lee alleged that the DVA had improperly failed to promote him to the position of "GS-12 Lead Electronic Tech" ("GS12-LET").[1]

As union members, all three claimants were subject to a collective bargaining agreement which set out an internal procedure for employment grievances. This grievance procedure provided an alternative to the filing of a formal complaint with the DVA's Equal Employment Office ("EEO") under Title VII procedures. According to the terms of the collective bargaining agreement, employment grievances that were not successfully resolved by the internal DVA procedures were subject to mandatory binding arbitration. Lee and his co-claimants pursued their claims through the grievance procedure and then, after that process proved unsuccessful, through binding arbitration.

_____

[1]Lee's position at the time of the suit was GS-11 Electronics Tech.

-2-

On July 5, 2001, while not attributing promotion decisions to racial discrimination, an arbitrator found in favor of Lee and the one remaining co-claimant on their claim that certain individuals had been preselected and favored for promotions.[2] As a result, in a written order, the arbitrator awarded Lee and his co-claimant the position of "GS-12 Computer Specialist" ("GS12-CS").

Despite this apparent victory, Lee contacted the arbitrator and the DVA immediately after the decision was rendered to ask for a change in the awarded position. Lee was unsatisfied with the GS12-CS position, and insisted on being designated as a GS12-LET.[3] In correspondence with Lee's union rep, Abe Gordon, Dr. Derek Drawhorn, a DVA representative, stated that the DVA was willing to adjust Lee's arbitration award through a joint stipulation, thus leaving Lee in essentially his CS/HMU job - the position he held before the grievance and arbitration - but with his desired designation of GS12-LET. Lee claims that based on such assurances, which went on until March 2002, he did not file a timely appeal of the arbitrator's award.

Sometime between January 2001 and January 2002, as part of an

---

[2]For reasons that are unexplained, one co-claimant did not remain a party to the arbitration proceeding to its conclusion.

[3]Lee says he considered the GS12-CS position to be a lesser position and concluded that the award of that position by the arbitrator was a mistake. There is no explanation from the parties as to how the arbitrator arrived at this particular award and no explanation from Lee about the specific deficiencies in the GS12-CS position as compared with the GS12-LET position.

agency restructuring, the DVA abolished the CS/HMU – the unit in which Lee had previously worked and to which he desired to return. In the process, the DVA eliminated Lee's previous electronic tech position, leaving the DVA with no more such positions. Later, in March 2002, Lee says he officially received word that the DVA was no longer interested in adjusting the arbitrator's award and giving him a GS12-LET position.

Along with his difficulties in negotiating a revision of the arbitrator's award, Lee encountered other problems after his arbitration award. For instance, Lee claims he was told he would have to receive training and certification for his new position and that he must complete the training in two years. He alleges that two similarly situated white employees who had not complained about racial discrimination were given four years to complete the same training. He also alleges that these white employees were given access to increased training opportunities and more high level meetings with supervisors than he was. Finally, Lee claims that white employees were given preferences in picking desirable offices, while he was placed in an office with student interns.

In response to these problems, Lee filed a formal complaint with the DVA's EEO on April 10, 2002. In the complaint, he alleged that the following unfavorable actions were either racially motivated or reprisal for the 1998 grievance and the resulting 2001 arbitration award: (1) change of assigned duties; (2) transfer to an undesirable work area; (3) removal from his career choice; (4)

-4-

imposition of a certification requirement; (5) refusal to correct the 2001 arbitration award; (6) abolition of his job position; and (7) failure to train.

In a letter dated April 23, 2002, the EEO notified Lee that it had accepted his claim regarding discrimination and retaliation on the issue of training and it issued a right to sue letter based on that claim. The EEO, however, rejected Lee's other claims. The EEO counselor explained that because actions 1-5 were all related to and/or had been addressed in the 2001 arbitration decision and because Lee had elected to pursue a union grievance, he was precluded from collaterally pursuing those same complaints through the EEO/Title VII statutory process. Further, the EEO dismissed action 6, which concerned the abolition of Lee's former job and department, because Lee had failed to contact an EEO counselor within 45 days of the action.

Lee later filed this lawsuit. However, instead of simply pursuing a discrimination or retaliation claim based on inadequate training, Lee reurged all the allegations presented to the EEO, including those that were rejected. In response to Lee's suit, the DVA filed a motion for summary judgment, asserting the correctness of the EEO's conclusion that the majority of Lee's allegations were barred from consideration. On the subject of training disparities, the one allegation that the EEO concluded would provide an adequate basis for a Title VII claim, the DVA argued that Lee's allegation did not constitute an "adverse employment action" under this

circuit's precedent.

Agreeing largely with the DVA's legal arguments, the magistrate judge issued a memorandum to the district court recommending dismissal of all claims. The district court adopted the magistrate's recommendations and issued a summary judgment order in favor of the DVA.

In his appeal to this court, Lee argues that the district court erred in (1) concluding that he was barred from pursing most of his claims; (2) failing to apply principles of equitable estoppel to avoid the time bar on his claim based on job abolishment; (3) dismissing his retaliation claim; and (4) dismissing his discrimination claim.

## II.

This court reviews a district court's grant of summary judgment <u>de novo</u>, applying the same standard as the district court.[4] Summary judgment should be granted only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.[5] The evidence should be viewed in the light most favorable to the nonmoving party.[6]

## III.

---

[4]<u>Hirras v. Nat'l R.R. Passenger Corp.</u>, 95 F.3d 396, 399 (5th Cir. 1996).

[5]Fed. R. Civ. P. 56(c).

[6]<u>Am. Home Assurance Co. v. United Space Alliance</u>, 378 F.3d 482, 486 (5th Cir. 2004).

-6-

<u>1. Did the district court err in barring Lee from asserting certain claims in his lawsuit?</u>

By filing a written grievance, Lee made a formal election to pursue his claim through the negotiated grievance procedure.[7] Under grievance procedures outlined in the United States Code, which the parties agree apply to the DVA, this election foreclosed Lee from pursuing the same matters in a lawsuit:

> An aggrieved employee affected by a prohibited personnel practice . . . which also falls under the coverage of the negotiated grievance procedure may raise the matter under a statutory procedure [EEO/Title VII] or the negotiated procedure, but not both.

5 U.S.C. § 7121(d).

Lee asserts that he should be allowed to pursue his claims in court because the challenged actions dismissed by the district court (1-5 above) were not a part of the previous grievance and arbitration but rather grew out of later conduct on the part of the DVA. Lee argues that representations made during post-arbitration negotiations by the DVA induced him into foregoing his challenge of the arbitrator's award and that it was these false representations, and not the arbitrator's decision, that motivated his April 2002 charge.

Lee's argument is unpersuasive. The arbitration award, even if it was mistaken, was undoubtedly the direct cause of at least

---

[7]<u>See</u> 29 C.F.R. § 1614.301 ("An election to proceed under a negotiated grievance procedure is indicated by the filing of a timely written grievance").

four out of the five challenged acts: (1) the change of Lee's duties; (2) removing him from his career choice; (3) the certification requirement; and (4) the award itself.  We have previously explained that "a federal employee [with exclusive union representation] who alleges employment discrimination must elect to pursue his claim under either a statutory procedure [(e.g., the EEO process)] or a union-assisted negotiated grievance procedure [unless the grievance procedure specifically excludes discrimination claims]; he cannot pursue both avenues, and his election is irrevocable."[8]  Thus, the only proper challenge to the arbitrator's award was an appeal of the arbitrator's order.  Lee has cited no authority in support of his argument that misrepresentations by the DVA relieved him either of his binding initial election to pursue these matters in the negotiated grievance procedure or his obligation to appeal an unsatisfactory award.

As for Lee's allegation concerning his assignment to an undesirable office space, Lee implies that his office assignment did not grow directly out of the arbitration decision, i.e., that not all computer specialists sit in the same office or group of offices.  The DVA does not dispute this point.  As such, this matter was not "raised . . . in a negotiated grievance procedure"

---

[8]Maddox v. Runyon, 139 F.3d 1017, 1021 (5th Cir. 1998) (brackets and parentheses in original) (citing in part 5 U.S.C. § 7121(d)).

pursuant to 29 C.F.R. § 1614.107(a)(4), and Lee should have been allowed to have this act considered in the course of his Title VII proceedings. As a result, the district court erred in failing to consider this action.

2. Did the district court err in precluding Lee from raising the abolishment of his old employment unit in his lawsuit?

The Code of Federal Regulations provides that federal employees "must initiate contact with a[n] [EEO] Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action."[9]

Lee concedes that he did not file a complaint regarding the abolishment of his old job within the 45 day time limitation. However, Lee argues that the DVA's representations to him that he would be assigned to his old duties, but as a GS12-LET, prevented him from learning that the abolishment of his position was a discriminatory/retaliatory act and thus his complaint based on this act should be preserved.

We disagree. Lee does not clearly explain how any misrepresentations from the DVA served to conceal the discriminatory or retaliatory nature of the DVA's elimination of his old department. He does not allege, for instance, that the full scope or effect of the reorganization was in any way concealed

_____

[9] 29 C.F.R. § 1614.105(a)(1).

during the relevant limitations period.  Further, Lee fails to cite a single decision to support a finding that either 29 C.F.R. § 1614.105(a)(2)'s tolling provision or general equitable tolling principles should be applied to this case.  The district court did not err when it refused to consider this allegation.

3.  <u>Did the district court err in finding disparities in training could not support a retaliation charge?</u>

To sustain a retaliation claim, the employee's prima facie case must show: (1) that the employee engaged in a protected activity; (2) that an adverse employment action occurred; and (3) that a causal link existed between the protected activity and the adverse action.[10]  The district court, relying on precedent from this circuit, found that Lee had failed to meet the second prong of the prima facie case because his failure to train claim did not constitute an "adverse employment action."

The Supreme Court recently clarified the requirements for proving retaliation under Title VII in <u>Burlington Northern & Santa Fe Railway Co. v. White</u>.[11]  The Court rejected the approach taken by several circuits, including this one, that required plaintiffs to demonstrate an "ultimate employment decision" to satisfy the "adverse employment action" element of a retaliation claim.[12]

---

[10]<u>Baker v. American Airlines, Inc.</u>, 430 F.3d 750, 754 (5th Cir. 2005).

[11]126 S.Ct. 2405 (2006).

[12]<u>Id.</u> at 2414.

Instead, the Court explained that in order for an employer's acts to constitute actionable retaliation: "[a] plaintiff must show a reasonable employee would have found the challenged action materially adverse, which . . . means it might have dissuaded a reasonable worker from making or supporting a charge of discrimination."[13]

The district court conducted its analysis of the training claim under the old, now rejected standard. For that reason, we vacate the award of summary judgment on Lee's retaliation claim and remand this case to the district court so it can reconsider this issue consistent with <u>Burlington Northern</u>. On remand, in addition to reevaluating the allegation regarding training, the district court should consider Lee's allegation regarding inferior office placement.

4. <u>Did the district court err in dismissing Lee's discrimination claims?</u>

To establish a prima facie case of discrimination, a plaintiff must provide evidence that he "(1) is a member of a protected class; (2) was qualified for [his] position; (3) was subject to an adverse employment action; and (4) was replaced by someone outside the protected class, or, in the case of disparate treatment, shows that others similarly situated were treated more favorably."[14]

---

[13]<u>Id.</u> at 2415.

[14]<u>Okoye v. Univ. of Tex. Houston Health Sci. Ctr.</u>, 245 F.3d 507, 512-13 (5th Cir. 2001).

As in the retaliation context, we have required that an employee show an ultimate employment action, such as hiring, granting leave, discharging, promoting, and compensating, to establish a prima facie case under Title VII's substantive discrimination provisions.[15] Lee argues that the Supreme Court's recent Burlington Northern decision, while discussing only retaliation claims, logically requires this court to relax the standard applicable to determining whether an employer's acts constitute an "adverse employment action" in the discrimination context.

We need not resolve today any claimed tension between the Burlington Northern decision and this circuit's "ultimate employment decision" standard. The report of the magistrate judge, adopted by the district court, includes no factual or legal analysis of Lee's discrimination claim. On remand, the district court should include an analysis of the parties' summary judgment evidence on this issue and apply the Title VII substantive discrimination provision to those facts.

IV.

For the foregoing reasons, the district court's grant of summary judgment in favor of DVA is AFFIRMED in all respects except with respect to the dismissal of Lee's retaliation and discrimination claims based on inadequate training and inferior

---

[15]See Pegram v. Honeywell, Inc., 361 F.3d 272, 282 (5th Cir. 2004).

office placement.  We VACATE the dismissal of those claims and REMAND the case to the district court to reconsider the claims in light of <u>Burlington</u> and consistent with this opinion.  The district court is free to evaluate whether Lee has satisfied the causation and other elements of his discrimination and retaliation claims.

AFFIRMED IN PART.

VACATED AND REMANDED IN PART.